IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| HAMBURG SUDAMERIKANISCHE DAMPFSCHIFFAHRTS-GESELLSCHAFT KG, | ) ) ) | Civil Action No. 7:12-cv-00083-MGL |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TEXPORT, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |
| TEXPORT, INC., | ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| INDUSTRIAL WIPER & SUPPLY, INC. and TEXTILE BUFF & WHEEL COMPANY a/k/a TEXTILE WASTE SUPPLY COMPANY, LLC, | ) ) ) ) | |
| Third-Party Defendants. | ) ) | **OPINION AND ORDER** |
| _____ | ) | |
| INDUSTRIAL WIPER & SUPPLY, INC., | ) ) | |
| Third-Party Defendant/ Fourth-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| FAB-TECH, INC. and PEERLESS MATERIALS COMPANY, | ) ) ) | |
| Fourth-Party Defendants. | ) ) | |
| _____ | ) | |

This civil action involves the shipment of goods identified as "textile rags and remnants"

from the United States to Brazil in 2011 by Defendant Texport, Inc. ("Texport") and/or its agents, servants, subcontractors and/or employees. (ECF No. 1.) Pending before this court are Third-Party Defendant Textile Buff & Wheel Company a/k/a Textile Waste Supply Company, LLC's ("Textile Waste") Motion to Dismiss (ECF No. 82) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and Fourth-Party Defendant Peerless Materials Company's ("Peerless") Amended Motion to Dismiss Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (ECF No. 102.) For the reasons set forth below, the court GRANTS both Motions to Dismiss (ECF No. 82 & ECF No. 102), finding personal jurisdiction lacking as to both Textile Waste and Peerless and dismisses all claims asserted against these defendants accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

This admiralty case involves the September/October 2011 shipment of two containers of goods identified as textile rags and remnants on behalf of South Carolina Corporation Texport. Plaintiff Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG ("Plaintiff") entered a contract with Texport whereby Plaintiff agreed to carry certain goods from South Carolina to Brazil on behalf of Texport. Brazilian authorities refused the shipment upon delivery because it was determined that the contents of the goods consisted of used contaminated sheets. The Brazilian government imposed a $1.2 million fine on Plaintiff. Consequently, on January 9, 2012, Plaintiff sued Texport for damages related to the fine, detention of the cargo, and the inability to use the containers in which the allegedly defective goods were transported. (ECF No. 1.) Additional claims have been filed against other parties involved in the shipment, sale and transfer of the goods prior to the transport to Brazil.

On March 5, 2012, Texport filed an answer and Third- Party Complaint alleging that Texport

-2-

contracted with Industrial Wiper & Supply, Inc. ("Industrial Wiper") to provide the allegedly defective textile goods in secure bales suitable for exporting and delivery to Brazil. (ECF No. 11.) Texport further alleged that Industrial Wiper obtained some of the textile goods from Textile Waste who packaged the goods into bales for international shipping. (ECF No. 11.) On April 19, 2012, Industrial Wiper filed an Answer, Cross-Claim against Third-Party Defendant Textile Waste, and Fourth-Party Complaint against Fab-Tech, Inc. ("Fab-Tech") and Peerless wherein Industrial Wiper sought to recover damages from Textile Waste, Fab-Tech, and Peerless relating to the allegedly defective goods. (ECF No. 19.) Thereafter, on June 25, 2012, Fourth-Party Defendant Fab-Tech filed a cross-claim against Textile Waste and Peerless wherein Fab-Tech sought to recover damages from Textile Waste and Peerless relating to the allegedly defective goods. (ECF No. 48.)

On March 26, 2012, Textile Waste filed a Motion to Dismiss for lack of personal jurisdiction. (ECF No. 12.) Plaintiff, Industrial Wiper, and Textile Waste reached an agreement and filed a joint proposed scheduling plan which provided for an extended period in which to consolidate jurisdictional motions, have limited discovery, and then file the appropriate replies. (ECF No. 24.) The court granted the consent motion on May 4, 2012 (ECF No. 27) and the court subsequently granted another consent motion which allowed for the filing of an amended motion to dismiss following the conclusion of jurisdictional discovery on September 14, 2012. (ECF Nos. 37 & 38.) Peerless filed a Motion to Dismiss for lack of personal jurisdiction on July 9, 2012. (ECF No. 53.) Plaintiff and Industrial Wiper sought to engage in discovery on personal jurisdiction and Peerless's contacts with the state of South Carolina. (ECF No. 58, 59 & 65.) This court ordered Peerless to respond to discovery requests as to personal jurisdiction as set forth in its September 25, 2012 order and allowed for the filing of an amended motion to dismiss after the conclusion of jurisdictional

-3-

discovery. (ECF No. 81.) Textile Waste filed its amended Motion to Dismiss on October 15, 2012

(ECF No. 82) and Peerless filed its amended Motion to Dismiss on January 11, 2013. (ECF No.

102) This court heard arguments on these pending motions on May 21, 2013. (ECF No. 120.)[1]

## STANDARD OF REVIEW

Upon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff has the

burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th

Cir.1997); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th

Cir.2003). Generally, when a district court decides a pre-trial motion to dismiss for lack of personal

jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie

showing of personal jurisdiction and the court is to construe the pleadings, affidavits and other

supporting documents presented to the court in the light most favorable to plaintiff by assuming

credibility and drawing all inferences and resolving all factual disputes in the plaintiff's favor. *See*

*Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30,

2000) (unpublished opinion); *Mylan Labs., Inc., v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs*

*v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In doing so, however, the court need not "'credit

conclusory allegations or draw farfetched inferences.'" *Masselli*, 2000 WL 691100, at *1 (quoting

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). Where the parties have

engaged in jurisdictional discovery, however, the plaintiff must establish personal jurisdiction by a

---

[1]The court held a general hearing on the motions and heard arguments from the attorneys
but the hearing was not an evidentiary one. Indeed, both parties presented only arguments
concerning their briefing materials at the hearing.

preponderance of the evidence.[2] *Brown v. Geha–Werke GmbH*, 69 F.Supp.2d 770, 774 (D.S.C.1999) ("Although this court decided the issue of personal jurisdiction without an evidentiary hearing, it did not do so on the pleadings and affidavits alone.  Instead, the parties have engaged in jurisdictional discovery and offered evidence beyond the pleadings and affidavits.  Consequently, the jurisdictional information before the court is more like that presented at an evidentiary hearing and less like the jurisdictional allegations of a complaint."); *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

I.    Minimum Contacts

In determining whether personal jurisdiction exists over a non-resident defendant, the court must perform a two-step analysis.  The court must first determine whether the South Carolina (forum state) long-arm statute provides a basis for asserting jurisdiction over the defendant.  *See Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir.1997).  Then, the court must determine that the exercise of personal jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.,* 201 F.3d 314, 317 (4th Cir. 2000).  South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause.  *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002).  Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of

_____

[2] Even if only a prima facie showing of jurisdiction were required, the court finds that Plaintiff and Industrial Wiper have failed to make the requisite showing based on the facts presented here.

the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623–24 (4th Cir.1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). When the cause of action does not arise out of the defendant's contacts with the forum, however, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 415-416. "Whether general or specific jurisdiction is sought, a defendant's 'contacts' with a forum state are measured as of the time the claim arose." *Cape v. von Maur*, 932 F.Supp. 124, 127 (D.Md.1996); *see also Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir.1990) ("Only contacts occurring prior to the event causing the litigation may be considered."); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287, n. 2 (4th Cir.1987)("We do not base our holding on the fact that Consolidated expanded its connection with Virginia after the accident.")

A.      Specific Jurisdiction

If a cause of action arises out of or relates to a defendant's contacts with the forum state, the court can exercise specific jurisdiction. A defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Further, "[i]t is well established that a single act can support jurisdiction if that act has a 'substantial connection' with the forum and gives rise to, or figures prominently in, the cause of action under consideration." *Campbell v. Johnson & Towers, Inc.*, 123 F.Supp.2d 329, 335 (D.S.C. 1999); *see also Chung v. NANA Development Corp.*, 783 F.2d 1124, 1131 (4th Cir. 1986).

B.      General Jurisdiction

"[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction. *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). The corporate operations within the state must be so substantial and of such an extensive nature as to justify suit against it on all causes of action dealing with matters entirely distinct from the instant litigation. *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S.Ct. at 2846, 2853 (2011) (citing *Int'l Shoe Co. v.*

-7-

*Washington*, 326 U.S. 310, 318 (1945)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," i.e., its principal place of business or place of incorporation. *Goodyear*, 131 S.Ct. at 2853–54.

  II.  Fair Play and Substantial Justice

  After addressing the defendant's contacts as set forth above, the court is to then consider whether the exercise of jurisdiction "would comport with 'fair play and substantial justice'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citing *Int'l Shoe Co.*, 326 U.S. at 320). In determining whether the exercise of jurisdiction comports with fair play and substantial justice, the court evaluates the following factors: 1) the burden on the defendant; 2) the forum State's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several States in furthering fundamental substantive social policies. *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir.2001) (quoting *Burger King*, 471 U.S. at 477)). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (quotations and citations omitted).

## DISCUSSION AND ANALYSIS

I. <u>Textile Buff & Wheel Company a/k/a Textile Waste Supply Company, LLC's Motion to Dismiss</u>

Third-Party Defendant Textile Waste moves pursuant to Rule 12(b)(2) for an order dismissing all claims which have been asserted against it for lack of personal jurisdiction. (ECF No. 82.) Textile Waste claims that it does not possess sufficient minimum contacts with the State of South Carolina required to satisfy due process and subject it to the jurisdiction of this court. Plaintiff asserts that Textile Waste's contacts with South Carolina are sufficient to confer personal jurisdiction as Textile Waste supplied the materials at issue to a South Carolina entity, which caused damage in South Carolina, and because Textile Waste has been a party to at least 75 separate transactions/contracts with South Carolina entities. (ECF No. 95.) Industrial Wiper also filed a response in opposition to Textile Waste's Motion to Dismiss (ECF No. 96) adopting the positions and arguments made by Plaintiff. Textile Waste filed a reply memorandum in support of its Motion to Dismiss (ECF No. 99), particularly seeking to clarify the distinct nature of the analyses for specific and general jurisdiction as applied to the facts in this case.

Textile Waste operates as a wholesaler of cloths and rags. According to the affidavit of the managing partner of Textile Waste submitted in support of its Motion to Dismiss, Textile Waste is a limited partnership organized under the laws of the state of Massachusetts with its principal place of business in Massachusetts. (ECF No. 82-2 at 2.) The affidavit further states that Textile Waste does not own any property in South Carolina, does not maintain an office in South Carolina, does not have any employees operating in South Carolina, does not maintain a telephone number in South Carolina, does not have a mailing address in South Carolina, and does not advertise in South

Carolina.  (ECF No. 82-2 at 2.)  Other than the assertion that Textile Waste does not advertise in South Carolina, Plaintiff does not dispute these claims.[3]  (ECF No. 95 at 5.)

Textile Waste has purchased cloth material from Caruso Fabrics, a company operating in South Carolina, but the Textile Waste maintains that the cloth material that it purchased from Caruso Fabrics is not related to the goods at issue in this case.  (ECF No. 82-2 at 2-3.)  Textile Waste states that it does not regularly sell goods to individuals or entities located in South Carolina and does not regularly ship goods to South Carolina.  (ECF No. 82-2 at 3.)  Textile Waste states that since 2010, it has made a total of seven sales to individuals or entities located in South Carolina, representing less than seven tenths of one percent (0.7%) of Textile Waste's total sales during the time period. (ECF No. 82-2 at 3.)  Further, Textile Waste maintains that none of the goods sold since 2010 to individuals or entities located in South Carolina were the type of goods at issue in this matter.

As it relates specifically to this matter, Textile Waste states that it never entered into any contract to provide textile goods or any other goods to Texport or Industrial Wiper.  (ECF No. 82-2 at 3.)  In this case, pursuant to a Purchase Order and Invoice, Textile Waste contracted to provide "Laundry Sheets and Pillowcases Wiping Rags" to Fab-Tech, which is located in Maryland.  (ECF

---

[3]  Plaintiff contends that Textile Waste's website which is accessible to residents of South Carolina "may not be evidence of direct advertising in South Carolina, [but] it does indicate that Textile Waste is accessible to citizens of the State of South Carolina."  (ECF No. 95 at 5.)  To the extent Plaintiff seeks to imply jurisdiction based on Textile Waste maintaining a website, this is not grounds for the exercise of personal jurisdiction. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).  Further, the Fourth Circuit has also held that limited advertising and solicitation by a non-resident defendant in the forum state do not provide a sufficient basis for general jurisdiction. *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971).

No. 82-2 at 5.)  Fab-Tech arranged for the shipping of the goods and sent a truck to Textile Waste's

Massachusetts facility for pick up and then sold the goods to Industrial Wiper who then sold the

goods to Texport.  (ECF No. 82-2 at 3-4.)  At the time Textile Waste sold the goods to Fab-Tech,

Textile Waste states it had no knowledge that the goods would be sold to either Industrial Wiper or

Texport.  (ECF No. 82-2 at 4.)  The goods were shipped pursuant to a blind bill of lading, and

Textile Waste denies knowledge that the goods would be shipped to the State of South Carolina or

Brazil.  (ECF No. 82-2 at 4, 6-7.)

    A.  Specific Jurisdiction

In order to find that Textile Waste's contacts with the state are sufficient to establish specific

jurisdiction, the court must determine that the "out-of-state defendant engage[d] in some activity

purposely aimed toward the forum state and that the cause of action [arose] directly from that

activity."  *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 331-32 (D.S.C. 1999).  The

defendant's actions must have been "directed at the forum state in more than a random, fortuitous,

or attenuated way."  *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004)(internal citation omitted).

In its opposition to Textile Waste's Motion to Dismiss, Plaintiff provides two grounds as to

why Textile Waste is subject to specific personal jurisdiction.  First, Plaintiff claims that since

Textile Waste cannot identify from whom it purchased its source materials, some of the cargo in

question could contain materials purchased by Textile Waste from a South Carolina company called

Angelica Corporation, or other yet to be identified South Carolina entities.  (ECF No. 95 at 9.)  Next,

Plaintiff argues that the materials in question were delivered directly to South Carolina from Textile

Waste's Massachusetts facility and were then shipped directly from South Carolina to Brazil.  (ECF

No. 95 at 9.)  Based on the record before it, this court finds that Plaintiff has not satisfied its burden. Concerning the stated possibility that the cargo in question *may* have been purchased from a South Carolina company, the court finds this claim of personal jurisdiction to be speculative and conclusory and therefore insufficient to support a finding of specific jurisdiction.  In determining whether plaintiff has satisfied its burden, the court need not "credit conclusory allegations or draw farfetched inferences." *Global Technology Intern., Ltd. v. Continental Automotive Systems, Inc.*, No. 0:12–3041–CMC, 2013 WL 1809773, *2 (D.S.C. Apr. 29, 2013 (internal citation omitted).

Plaintiff makes much of the fact that Textile Waste shipped the materials in a baled form and that the materials were shipped directly from Textile Waste's facility to Texport's warehouse in South Carolina, with Textile Waste as the last entity with the ability to inspect the materials without incurring significant costs.  (ECF No. 95 at 4.)  According to the affidavit supplied on behalf of Textile Waste, the company had no dealings with any company in South Carolina in this matter, had no knowledge that the allegedly defective goods would be sold or shipped to a company in South Carolina, and never entered into any contract to provide textile goods to Texport or Industrial Wiper or to ship any goods to Texport's warehouse in South Carolina.  (ECF No. 82-2.)  Textile Waste states that its contract was with Fab-Tech which arranged for the shipping of goods pursuant to a blind bill of lading.  (ECF No. 82-2.)  Plaintiff attaches several exhibits in its opposition to Textile Waste's Motion to Dismiss, however, the relevant exhibits only further support Textile Waste's contention that it engaged in a sale of materials to Fab-Tech without knowledge as to where the materials would ultimately be shipped and distributed.  (ECF No. 95-2, 95-3, 95-7.)  Thus, while the materials in question were shipped from Textile Waste's facility in Massachusetts to South Carolina

-12-

Texport's warehouse, Plaintiff has not shown that Textile Waste directed the materials there or had anything more than fortuitous involvement in the materials getting to South Carolina. Even if it was foreseeable that the materials might make their way to South Carolina, Textile Waste engaged in no conduct to purposefully avail itself of South Carolina markets as it relates to this controversy. *See Goodyear,* 131 S.Ct. at 2851 ("Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation"); *see also Nutra Mfg., Inc. v. Pharmaline, Inc.*, No. Civ.A. 6:05-431-HFF, 2005 WL 2837519 (D.S.C. Oct. 27, 2005); *U.S. v. M/V Santa Clara I*, 859 F.Supp. 980, 988 (D.S.C. 1994)("Furthermore, as a basis for personal jurisdiction, Degesch Chile maintains that it was foreseeable that the magnesium phosphide could have ended up in any port on the M/V Santa Clara I's ("Santa Clara") itinerary and therefore asserts that since Hardrodt had a hand in placing the magnesium phosphide on the Santa Clara, it is subject to personal jurisdiction anywhere she makes port. This position is diametrically opposed to the law of personal jurisdiction as developed by the United States Supreme Court and the Fourth Circuit Court of Appeals.") While South Carolina felt the effects of the alleged acts and arguably has a significant interest in resolving this matter as Plaintiff contends (ECF No. 95 at 5 & 14), these considerations do not "supplant the minimum contacts analysis. . . ." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

B.  General Jurisdiction

Textile Waste also argues that it does not have sufficient contacts with the state of South Carolina to confer general personal jurisdiction because the contacts it has with the state have been minimal (less than 1 % total sales to entities operating in South Carolina and less than 1.5% of total purchases from entity in South Carolina), it does most of its operations with entities in the northeastern United States, and has no operations (i.e., property, mailing address, office, employees, telephone number) in South Carolina.  (ECF No. 82-1.)  Other than the assertion that Textile Waste does not advertise in South Carolina, Plaintiff does not dispute these claims. (ECF No. 95 at 5.)

Because Plaintiff does not dispute that Textile Waste has no operations in South Carolina (other than the advertising argument rejected above), in order to exercise general jurisdiction over Textile Waste, the court must find that Textile Waste's connection with South Carolina establishes a "continuous and systematic affiliation necessary to empower [the state] courts to entertain claims unrelated to the foreign [sister-state] corporation's contacts with the State." *Goodyear*,131 S.Ct. at 2851.  The affiliation with the state must be so "continuous and systematic" as to render the defendant "essentially at home in the forum state."  *Id.*  As discussed above, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).  Further, the Fourth Circuit has noted that "broad constructions of general jurisdiction should be generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

Plaintiff asserts that the activities of Textile Waste are sufficient for the court to exercise general jurisdiction over Textile Waste: 1) ongoing and continuous transactions with entities in

-14-

South Carolina, including purchasing materials from South Carolina entity Caruso Fabrics as recently as August 15, 2012[4]; 2) since 2007, Textile Waste has been party to at least seventy-five separate transactions/contracts with South Carolina entities (primarily Caruso Fabrics) which involved shipping and placing orders; and 3) Textile Waste apparently produced evidence of twenty-six separate purchases made from Angelica Corporation, a company which has a facility located in Columbia, South Carolina, in the eight months prior to the 2011 shipment involved in this litigation.[5]  (ECF No. 95 at 8, 10-11.)

Thus, the court must determine whether these transactions are sufficient to conclude that Textile Waste was in essence, at home in the forum state of South Carolina.  This court is not persuaded that Textile Waste's business activity in South Carolina is sufficient to vest this court with general jurisdiction over Textile Waste.  In its reply in opposition to Textile Waste's Motion to Dismiss, Plaintiff argues that this case is more like *Lee v. Walworth Valve Co.*, 482 F.2d 297 (4th Cir.1973), where the Fourth Circuit upheld general jurisdiction over a company whose annual sales in the forum were approximately $200,000 on average (in the late 1960s and early 1970s) and where sales representatives spent approximately 80 days per year on average in the forum state soliciting business which resulted in the shipment of Walworth pumps in interstate commerce.  *Lee v. Walworth Valve Co.*, 482 F.2d at 298-299.  Additionally, Walworth occasionally sent engineers into

_____

[4]The court does not give significant weight to these more recent contacts which occurred after the incident in question.

[5]The court has not been provided with evidence regarding the Angelica purchases or any evidence that the purchases made from Angelica Corporation were made from Angelica's South Carolina facility.

the state to deal with engineering problems. *Id.* at 299. The court concluded that the volume of business generated from South Carolina, although a small percentage of Walworth's total sales, aggregated several hundred thousand dollars a year and thus could not be labeled insubstantial. *Id.* Reviewing Textile Waste's Schedule of Sales and Costs of Sales (which includes a figure for purchases made in 2010 and 2011 and is attached as Exhibit H to Plaintiff's Memorandum in Opposition to the Motion to Dismiss) in conjunction with Textile Waste's relevant percentages of sales (0.7%) and purchases (1.5%) during those years where Textile Waste appeared to engage in only a limited amount of annual purchases and sales overall, Textile Waste has not engaged in nearly the volume of business as was engaged by the defendant Walworth in the *Lee* case.[6] Plaintiff acknowledged that the contacts with South Carolina described in *Lee* were limited and also acknowledged that decisions since *Lee* have suggested that even more contacts with the forum state be provided. (ECF No. 95 at 12-13.)

Further, in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), the Fourth Circuit discussed its decision in *Lee* and stated "[o]ur decisions since *Lee* make clear that even the contacts in *Lee* were marginal." *Id.* at 624 (applying South Carolina long arm statute). The court also noted that the exercise of jurisdiction in *Lee* was unusual because it was supported in part by the fact that cause of action arose on the high seas and not within the boundaries of any of the United States. *Id.* Accordingly, in *ESAB Group, Inc.*, the Fourth Circuit ultimately found no general

---

[6]Since Textile Waste did not make a substantial amount in sales and spent a limited amount for annual purchases for the years 2010 and 2011 (ECF No. 95-8 at 2), the percentages of 0.7% and 1.5% respectively are more properly classified as de minimus in terms of an actual business value.

jurisdiction where the defendant: 1) conducted its business entirely through mail order; 2) had no offices or sales representatives in South Carolina; 3) had no property in South Carolina; 4) had no phone listings South Carolina; 5) had never paid South Carolina taxes; 6) had not sent employees to South Carolina for any purpose; 6) had only 26 customers residing in South Carolina, constituting 1% of all of its customers and representing .079% of its gross annual sales; 7) had on one occasion purchased between $10,000 and $20,000 worth of parts from a South Carolina supplier; and 8) had never targeted formal advertising at South Carolina, having only once published formal advertising in a nationally circulated trade journal. *Id.* at 620, 624. Ultimately, the court found that the defendant's contacts in that case were constitutionally insufficient even when considering that a South Carolina court would be seeking to vindicate the interests of its own citizens. *Id.* at 624. Thus, while Plaintiff makes much of South Carolina's significant interest in resolving this matter, that the materials remain in storage in South Carolina, and that Textile Waste was brought into this case by a South Carolina corporation, the court notes that "although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *Id.* at 626.[7]

---

[7]The court also finds the Fourth Circuit's *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) decision instructive. In that case, the Fourth Circuit affirmed a Maryland District Court's determination that it could not exercise general personal jurisdiction over a defendant pharmaceutical corporation that: 1) employed 17-21 promotional representatives and two district managers in Maryland; 2) kept automobiles, samples, and promotional materials there; 3) held two regional and national meetings for district managers there; 4) had a one-time contract with a Maryland firm for some of its drug research; 5) made less than one percent of its total annual purchases in Maryland; and 6) had between $9 million and $13 million dollars in annual sales in Maryland over several years, which constituted approximately two percent of it total sales. *Nichols*, 991 F.2d at 1200. Despite these contacts with Maryland, however, the Fourth Circuit

Where Textile Waste does not have an operational presence in South Carolina and engaged in minimal transactions with South Carolina businesses for the purpose of buying and selling goods, this court finds that Plaintiff and Industrial Wiper have not made a showing of a "continuous and systematic affiliation" by Textile Waste which would subject Textile Waste to general jurisdiction in this court. The court has concluded that Textile Waste is not subject to specific personal jurisdiction either and since the court has not found the sufficient minimum contacts, the court need not address the fair play and substantial justice arguments raised in response to the Motion to Dismiss. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291-92, 294 (1980). Without a basis to exercise personal jurisdiction over Textile Waste, the claims pending against Textile Waste in this court are subject to dismissal.

## II. <u>Amended Motion to Dismiss filed by Fourth-Party Defendant Peerless Materials Company</u>

Fourth Party Defendant Peerless moves pursuant to Rule 12(b)(2) to dismiss all claims asserted against it in this case on the grounds of lack of personal jurisdiction. (ECF No. 102.) Peerless argues that it is not subject to general personal jurisdiction in South Carolina based on continuous and systematic contacts with South Carolina and that specific personal jurisdiction is also lacking due to Peerless's lack of involvement in the activities which led to this litigation. In its Reply to Peerless's Motion to Dismiss, Plaintiff does not argue that the court has specific

---

concluded that the defendant's activities were not the type of "'continuous corporate operation' that affects the determination of whether general jurisdiction exists" and defendant's purchases in Maryland were too insignificant to be considered. *Nichols*, 991 F.2d at 1198-1200 (internal citation omitted).

jurisdiction over Peerless and expressly acknowledges that it is not making the assertion as to Peerless. (ECF No. 108 at 7.) Instead, Plaintiff argues that Peerless's transactions with South Carolina entities DeRoyal Textiles and Affordable Wiping as well as the access Peerless provides to South Carolina residents through its website are sufficient to justify the exercise of general personal jurisdiction over Peerless. (ECF No. 108 at 7.) Industrial Wiper filed a short response in opposition to Peerless's Motion to Dismiss. (ECF No. 109). Industrial Wiper claims that Peerless has had voluminous contacts and transactions with the State of South Carolina which demonstrate a substantial connection between Peerless and South Carolina and show that Peerless availed itself of the privilege of conducting business in South Carolina. Peerless filed a reply in support of its Motion to Dismiss (ECF No. 112) seeking to clarify the distinction in the analyses for specific jurisdiction and general jurisdiction and maintaining that it does not have sufficient "continuous activity" to satisfy the higher threshold for general jurisdiction. Because neither Plaintiff nor Industrial Wiper contend that this court has specific personal jurisdiction over Peerless based on its conduct in matters related to this lawsuit, the court does not address specific jurisdiction as to Peerless and this court turns to an analysis of whether general jurisdiction exists.

Peerless provided the affidavit of its president in support of its amended Motion to Dismiss. According to the affidavit, Peerless is a California corporation involved in the acquisition and re-sale of reclaimed textile materials. (ECF No. 102-3 at 2.) Peerless does not have any offices in South Carolina, no agents in South Carolina, claims to have never advertised or solicited business in South Carolina, and states that it has never sold any products or materials to an entity located in South Carolina. (ECF No. 102-3 at 3.) Peerless states that its only connection to the parties and

claims in this case is through its sale of bales of textile materials to Fab-Tech, a Maryland corporation.  (ECF No. 102-3 at 4.)  Peerless reviewed its sales, billing, and shipping records and identified two entities, DeRoyal Textiles, Inc. ("DeRoyal") and Affordable Wiping Rags, Inc. ("Affordable") as entities related to South Carolina with which it might have had interaction.  (ECF No. 102-3 at 3.)  Peerless states that it has only purchased material from DeRoyal, a company with its principal place of business in South Carolina, and has never sold any materials to DeRoyal.  The affidavit further states that from 2003 to 2007, Peerless filled a small number of orders for Affordable, a South Carolina corporation, however, none of the materials associated with these orders were acquired from or shipped to South Carolina as the order were filled for Affordable's customers on the West Coast.  (ECF No. 102-3 at 4.)  The total value of these orders filled from 2003 to 2007 is claimed to be less than $20,000.  (ECF No. 102-3 at 4.)

Plaintiff's basis for general jurisdiction for Peerless is based on: 1) Peerless's website which is accessible to residents of South Carolina and provides a mechanism for potential customers to contact Peerless for more information and also provides Peerless with a mechanism to contact customers about Peerless's services; and 2) Peerless's purchases and sales from South Carolina entities DeRoyal and Affordable which equal at least 104 transactions with these two entities between January 2007 and October 2012 according to Plaintiff's calculations.  Plaintiff admittedly acknowledges that operating a website alone may not be sufficient evidence of direct advertising in South Carolina but claims that the design of Peerless's website combined with its dealings with DeRoyal and Affordable make jurisdiction proper in this matter.  (ECF No. 108 at 8.)  Specifically, Plaintiff states that as part of its responses to jurisdictional discovery, Peerless produced copies of

telephone and fax records from January 2011 through May 2012[8] which indicate that Peerless made thirteen telephone calls to entities located in South Carolina and sent two faxes to South Carolina numbers "which could be interpreted to reflect solicitation of business and/or responses to inquiries made through the Peerless website." (ECF No. 108 at 7-8.) Plaintiff indicates that e-mail correspondence between Peerless and DeRoyal evidences a significant and meaningful business relationship between the two companies and a visit by *DeRoyal representatives* to Peerless's warehouse facility in *California* shows the same. (ECF No. 108 at 9-10.) Plaintiff argues that although Peerless admitted that it filled orders for Affordable in the amount of approximately $20,000 and produced evidence of the four relevant orders, the invoices Peerless produced do not actually total the claimed sales amounts on the invoices themselves which leads Plaintiff to believe that there could be a significant number of additional transactions between the two companies. (ECF No. 108 at 10.) Plaintiff contends that these contacts are sufficient to justify the exercise of general personal jurisdiction over Peerless.

The court has fully set forth the applicable standard of review and case law concerning general jurisdiction above and has applied the analysis to determine that a "continuous and systematic affiliation" between Textile Waste and South Carolina is lacking. It is clear that the contacts at issue here between Peerless and South Carolina are even more attenuated than those concerning Textile Waste. The court's rationale concerning Textile Waste's Motion to Dismiss

---

[8]The court does not give significant weight to these more recent contacts which occurred after the incident in question or to any of the 104 Peerless transactions which occurred after the incident in question.

-21-

applies with equal force here as it relates to Peerless's Motion to Dismiss. Peerless has made a mere four sales to a South Carolina entity. Peerless has made less than 100 purchases from a South Carolina entity during the relevant time frame. These very minimal transactions, in light of the fact that Peerless is a California corporation with no operations in South Carolina, are not enough to put Peerless "at home" in the forum state of South Carolina. Plaintiff cannot be allowed to construct the continuous and systematic affiliation between Peerless and South Carolina needed to establish general jurisdiction.

Additionally, Plaintiff's assertion about Peerless's telephone and fax communications to South Carolina numbers and the contention that they could reflect solicitation of business associated with Peerless's website is both speculative and unsupported by any evidence. Of course, as previously noted, the Fourth Circuit has held that limited advertising and solicitation by a non-resident defendant in the forum state do not provide a sufficient basis for general jurisdiction. *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971). Even if this court were to classify these communications as advertising and solicitation, they would indeed be classified as minimal at best. Further, the Fourth Circuit's holding and reasoning in *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 715-716 (4th Cir. 2002) calls for a rejection of Plaintiff's argument that the nature, setup, and maintenance of Peerless's website itself is a basis for the assertion of general jurisdiction. In the *ALS* case, the Fourth Circuit stated "[e]ven though electronic transmissions from maintenance of a website on the Internet may have resulted in numerous and repeated electronic connections with persons in Maryland, such transmissions do not add up to the quality of contacts necessary for a State to have jurisdiction over the person for all purposes." *Id.*

at 715-716 ("We are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions. Something more would have to be demonstrated.")

Since the court has not found sufficient minimum contacts to support personal jurisdiction over Peerless in this case, the court need not address the fair play and substantial justice factors. The facts as alleged do not support a finding that Peerless's contacts with this forum were substantial, or continuous and systematic.

### CONCLUSION

For the reasons set forth above, this court GRANTS Third-Party Defendant Textile Buff & Wheel Company, a/k/a Textile Waste Supply Company, LLC's Motion to Dismiss (ECF No. 82) and Fourth-Party Defendant Peerless Materials Company's Amended Motion to Dismiss. (ECF No. 102.) All claims pending against these defendants are dismissed for lack of personal jurisdiction.

IT IS SO ORDERED.

s/ Mary G. Lewis
United States District Judge

Spartanburg, South Carolina
June 20, 2013